COOLEY LLP
RYAN E. BLAIR (246724)
(rblair@cooley.com)
VIVIENNE A. GOLDSCHLAG (345611)
(vgoldschlag@cooley.com)
10265 Science Center Drive
San Diego, California 92121-1117
Telephone:     +1 858 550 6000
Facsimile:     +1 858 550 6420

BRETT H. DE JARNETTE (292919)
(bdejarnette@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone:     +1 650 843 5000
Facsimile:     +1 650 849 7400

CAITLIN B. MUNLEY (*Pro Hac Vice*)
(cmunley@cooley.com)
1299 Pennsylvania Avenue NW, Suite
Washington, District of Columbia 20004-2400
Telephone:     +1 202 842 7800
Facsimile:     +1 202 842 7899

NICHOLAS R. ORR (334142)
(norr@cooley.com)
355 South Grand Avenue, Suite
Los Angeles, California 90071-1560
Telephone:     +1 213 561 3250
Facsimile:     +1 213 561 3244

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE GERON CORPORATION SECURITIES LITIGATION | Case No. 3:25-cv-02507-VC |
| | **DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |
| | Hearing Date:   March 5, 2026 |
| | Hearing Time:   10:00 a.m. |
| | Judge:          Hon. Vince Chhabria |
| | Courtroom:      4, 17th Floor |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

REPLY ISO DEFS.' MTD
3:25-CV-02507-VC

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     PLAINTIFFS FAIL TO PLEAD FALSITY. ......................................................... 1

        A.      Statements About Geron's Pre-Launch Preparations for Rytelo. ........................... 2

        B.      Statements About Geron's Expectations for Rytelo's Market Uptake. .................. 3

        C.      Statements About Rytelo's Post-Launch Performance. ......................................... 6

III.    PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER. ................ 8

IV.     PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION. .................................................. 10

V.      CONCLUSION ................................................................................................... 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Align Tech., Inc. Sec. Litig.*,
2021 WL 1176642 (N.D. Cal. Mar. 29, 2021)................................................................... 7

*In re Am. Apparel, Inc. S'holder Litig.*,
855 F. Supp. 2d 1043 (C.D. Cal. 2012) ......................................................................... 8

*AMI v. Alphabet Inc.*,
2024 WL 4353637 (N.D. Cal. Sep. 3, 2024) .................................................................. 4

*In re Apple Inc. Sec. Litig.*,
2020 WL 6482014 (N.D. Cal. Nov. 4, 2020)................................................................... 6

*Black v. Snap, Inc.*,
2023 WL 6812762 (C.D. Cal. Sep. 26, 2023)................................................................ 10

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002)......................................................................................... 2

*City of Roseville Emps. Ret. Sys. v. Sterling Fin. Corp.*,
963 F. Supp. 2d 1092 (E.D. Wash. 2013) ..................................................................... 6

*City of Royal Oak Ret. Sys. v. Juniper Networks*,
Inc., 880 F. Supp. 2d 1045 (N.D. Cal. 2012) ............................................................... 9

*In re Cloudera, Inc. Sec. Litig.*,
121 F.4th 1180 (9th Cir. 2024) ..................................................................................... 6

*Curry v. Yelp Inc.*,
2015 WL 1849037 (N.D. Cal. Apr. 21, 2015) .............................................................. 10

*In re Digital Island Sec. Litig.*,
357 F.3d 322 (3d Cir. 2004).......................................................................................... 9

*Espy v. J2 Glob., Inc.*,
99 F.4th 527 (9th Cir. 2024) ......................................................................................... 2

*In re Facebook, Inc. Sec. Litig.*,
477 F. Supp. 3d 980 (N.D. Cal. 2020) .......................................................................... 6

*In re Fibrogen, Inc.*,
2022 WL 2793032 (N.D. Cal. July 15, 2022)............................................................... 10

*Hayden v. Portola Pharms., Inc.*,
2021 WL 3506614 (N.D. Cal. Aug. 10, 2021).............................................................. 9

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

ii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Jackson v. Fischer*,
  2015 WL 1143582 (N.D. Cal. Mar. 13, 2015)....................................................................... 2

*Lopes v. Fitbit, Inc.*,
  2020 WL 1465932 (N.D. Cal. Mar. 23, 2020)...................................................................... 8

*McGovney v. Aerohive Networks, Inc.*,
  2019 WL 8137143 (N.D. Cal. Aug. 7, 2019)................................................................... 7, 8

*In re Metawave Comms. Corp. Sec. Litig.*,
  298 F. Supp. 2d 1056 (W.D. Wash. 2003)........................................................................... 9

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008).......................................................................................... 10

*Morgan v. AXT, Inc.*,
  2005 WL 2347125 (N.D. Cal. Sep. 23, 2005) .................................................................... 9

*Nguyen v. Endologix, Inc.*,
  962 F. 3d 405 (9th Cir. 2020)............................................................................................. 7

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004)............................................................................................ 7

*Oakland Cnty. Voluntary Emps.' Beneficiary Ass'n v. Tesla Inc.*,
  2025 WL 3459471 (9th Cir. Dec. 2, 2025) ........................................................................ 2

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)............................................................................................................ 4

*In re Palo Alto Networks*,
  2025 WL 1093247 (N.D. Cal. Apr. 11, 2025) .................................................................... 3

*Roberti v. OSI Sys., Inc.*,
  2015 WL 1985562 (C.D. Cal. Feb. 27, 2015)..................................................................... 8

*Schueneman v. Arena Pharms., Inc.*,
  840 F.3d 698 (9th Cir. 2016).............................................................................................. 8

*In re Stem, Inc., Sec. Litig.*,
  2025 WL 3675114 (N.D. Cal. Dec. 17, 2025) ................................................................ 6, 7

*Stephens v. Maplebear Inc.*,
  2025 WL 1359125 (N.D. Cal. May 9, 2025) ...................................................................... 5

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

REPLY ISO DEFS.' MTD
3:25-CV-02507-VC

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Studen v. Funko, Inc.*,
    2024 WL 2209686 (W.D. Wash. May 16, 2024)........................................................................ 3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ................................................................................................................. 8

*U.S. v. Smith*,
    155 F.3d 1051 (9th Cir. 1998)................................................................................................. 8

*Uniformed Sanitationmen's Ass'n. Comp. Accrual Fund v. Equinix, Inc.*,
    2025 WL 39936 (N.D. Cal. Jan. 6, 2025) ............................................................................. 10

*Waswick v. Torrid Holdings, Inc.*,
    2023 WL 9197563 (C.D. Cal. Dec. 1, 2023) .......................................................................... 5

*Weston Fam. P'ship LLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022) .................................................................................................... 7

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021).................................................................................................. 6

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009).......................................................................................... 8, 9, 10

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iv

## I.   INTRODUCTION

Plaintiffs' Opposition highlights at least two fatal defects warranting dismissal.

***First***, Plaintiffs' theory that Geron's launch of RYTELO® ("Rytelo") was wrought with "operational failures" is at odds with the AC's own allegations and judicially noticeable facts. Indeed, Plaintiffs do not dispute Geron sold ***more than $75 million*** worth of Rytelo in the first two quarters after launch, with net product revenue steadily ***increasing*** quarter-over-quarter and ***exceeding*** both Geron's and the market's expectations. Nor do Plaintiffs dispute Geron generated such revenue by hiring 75 field employees, conducting pre-launch surveys on prescriber and patient uptake, and sharing clinical trial results with scientific journals and at medical conferences. They also do not dispute Geron's expectations for Rytelo's future growth was based on market research and its inclusion in the NCCN Guidelines as a treatment for LR-MDS across all patient lines. It is thus not credible, let alone plausible, to allege Geron knew "all along" Rytelo's launch would be a "disaster." That Geron first saw Rytelo's revenue flatten more than ***six months after launch***—after ***every*** challenged statement was made—does not render statements from nearly a year earlier false, much less allow an inference Defendants ***knew*** they were false. Yet that is what Plaintiffs claim. This is quintessential "hindsight pleading"—a gambit courts in this and all other circuits reject.

***Second***, Plaintiffs attempt to sidestep the requisite analysis of what information Defendants knew at the time each challenged statement was made. Instead, they lump time periods together, hoping the Court will impute facts Geron learned later in time to statements made earlier in the Class Period. Most egregiously, Plaintiffs ***blatantly misconstrue*** Defendants' February 2025 disclosure that Geron first saw flattening Rytelo sales around the "Thanksgiving holiday going forward" to somehow mean that flattening started in September 2024. As another example, they also rely extensively on CW2, who left Geron ***two months before Rytelo's launch*** and therefore had no basis to opine on Geron's launch preparedness.

These problems cannot be remedied. The AC fails to plead a false or misleading statement, any inference of scienter, or loss causation. The AC should be dismissed with prejudice.

## II.   PLAINTIFFS FAIL TO PLEAD FALSITY.

Plaintiffs challenge three groups of statements relating to Rytelo's launch but ignore ***when***

those statements were made and their vital context, underscoring the AC's[1] failure to plead contemporaneous falsity. *Oakland Cnty. Voluntary Emps.' Beneficiary Ass'n v. Tesla Inc.*, 2025 WL 3459471, at *1 (9th Cir. Dec. 2, 2025).

### A.  Statements About Geron's Pre-Launch Preparations for Rytelo.

Plaintiffs allege Defendants' statements about Rytelo launch preparedness omit that Geron (1) "had no marketing materials" prior to FDA approval and (2) was "ill-prepared" for launch. Opp. 9–10, 13. All but two of the challenged statements were made in February 2024, ***months before*** FDA approval of Rytelo, and thus were based on Geron's forward-looking expectations for Rytelo's potential uptake. ¶¶83, 85, 87, 89, 97–98. The other two statements were made post-FDA approval and were therefore wholly unrelated to Geron's launch preparations. ¶¶113, 120.

***No "Marketing Materials."*** Plaintiffs' claim that Geron had "no marketing materials" ignores that none of the challenged statements suggest Geron had created and/or was distributing such materials. Rather, what Defendants actually said was Geron was "engaging in marketing . . . ***preparatory efforts***" and "refin[ing]" its marketing plans. ¶¶85, 87. Plaintiffs' claimed omission therefore could not have "affirmatively create[d] an impression of a state of affairs that differs . . . from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Nor do Plaintiffs articulate ***what*** "marketing materials" means (aside from a hazy reference to "pamphlets, case studies or other resources," ¶70), ***when*** Geron should have had these materials but did not, or ***why*** Geron's "prescribing information" for Rytelo—which Plaintiffs define as "educational material" and admit Geron had at launch, ¶71—does not fall within that definition. *See Jackson v. Fischer*, 2015 WL 1143582, at *6 (N.D. Cal. Mar. 13, 2015) (plaintiff must "explain what is meant by 'proven concept'" to adequately allege why defendant's statement was false when made). And CWs 1–2's second-guessing about what Geron might have done differently with the marketing materials reads more like "[d]issatisfaction" with the ***types*** of materials Geron had—not fraud. *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 533 (9th Cir. 2024).

---

[1] "AC" and "¶" refers to the Amended Complaint, ECF No. 40, "Mot." refers to Defendants' Motion to Dismiss, ECF No. 50, "Ex." and "Appendix" refer to exhibits/appendices attached to the Declaration of Ryan E. Blair, ECF No. 50-1, and "Opp." refers to Plaintiffs' Opposition, ECF No. 54. All emphasis is added, and all internal quotation marks and citations are omitted.

Moreover, the Opposition—and the CWs—wholly ignores that federal law **prohibited** Geron from distributing marketing materials prior to FDA approval. *See* Mot. 11. Nor do Plaintiffs dispute Geron engaged in the pre-launch activities it could, including identifying Rytelo's potential prescriber base and publicly disseminating clinical trial results. *See id.* (citing 21 C.F.R. § 312.7 (allowing "dissemination of scientific findings in scientific or lay media")).

***Launch Preparedness.*** Plaintiffs claim Geron "falsely stated" it took steps to prepare for Rytelo's launch, like hiring and training a "highly experienced commercial and medical affairs team" and having "extensive discussions" with academic and community providers. Opp. 13. But Plaintiffs identify no particularized facts showing Geron did not take these steps. *See* ¶¶85, 87, 89, 97. Nor do Plaintiffs dispute that Geron **did** "build-out" a commercial team of about 75 field employees that was deployed into the market. Ex. 12 at 15; Ex. 33 at 26. Instead, Plaintiffs allege these statements must have been false because CW2 recalls "conflicting directives." Opp. 13–14. But Plaintiffs do not explain how alleged "internal chaos and disagreements about roles and strategy" rendered Geron's statements about launch preparedness false. *Id.* at 13. CW2's hyperbolic claim of "chaos" also lacks particularized facts regarding **what** "disagreements" happened and **when**.[2] Mot. 10, 15. CW2's "vague allegations of internal disagreement . . . establish, at most, a serious disconnect between [Geron's] C-Suite and its operations on the ground," not fraud. *Studen v. Funko, Inc.*, 2024 WL 2209686, at *18 (W.D. Wash. May 16, 2024). Nor do Plaintiffs meaningfully distinguish Defendants' cited cases. Opp. 15 n.9. For example, Plaintiffs attempt to "distinguish" *In re Palo Alto Networks*, 2025 WL 1093247 (N.D. Cal. Apr. 11, 2025), by stating that creating "programs to 'accelerate' did not mean strategy failing." Opp. 15 n.9. But *Palo Alto* proves the point—later modifications to a commercial program do not, without more, suggest earlier preparation efforts were knowingly inadequate, especially where, as here, Geron had no prior commercial experience and disclosed as much. *Compare* Opp. 15 n.9 *with* Mot. 10, 12–15.

**B.    Statements About Geron's Expectations for Rytelo's Market Uptake.**

Throughout the Class Period, Defendants expressed their views on Rytelo's potential uptake by (1) first- and second-line LR-MDS patients and (2) community prescribers. ¶¶93, 95, 100, 102,

---

[2] Plaintiffs do not dispute CW2 left Geron two months **before** Rytelo's launch. ¶27; Mot. 10.

Cooley LLP
Attorneys at Law
San Diego

3

**Reply ISO Defs.' MTD
3:25-cv-02507-VC**

104, 107, 109, 111, 113, 123, 128, 131, 133–34, 139, 145, 148. Plaintiffs challenge these forward-looking opinions without disputing Geron's reasons for them. However, such well-founded optimism about Rytelo's potential is only actionable if Defendants did not "actually hold[] the stated belief" or if their opinions contained false "embedded statements of fact" or "omitted" facts "necessary to make [the] opinion . . . not misleading." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 184–86 (2015). Plaintiffs make no such showing.

***Patient Uptake.*** Plaintiffs argue Defendants' expectations for Rytelo's patient uptake were false based solely on the conclusory assertion that Rytelo "was never going to be broadly used" by first- and second-line LR-MDS patients. Opp. 10. But Plaintiffs make no allegation showing what patient data or research supposedly informed Defendants that physicians would primarily prescribe Rytelo to third-line patients, much less when they would have known such information. Mot. 13. Nor does the Opposition ***even once*** acknowledge (much less refute) that Geron's belief was based on market research and updated NCCN Guidelines which recommended Rytelo's use across all treatment lines. Ex. 17 at 1; ¶111 ("We believe that these favorable NCCN guidelines have put RYTELO in a strong competitive position."); Ex. 11 at 7; *see* Ex. 12 at 13 (Geron publicly stating its market research supports its belief in Rytelo's potential to be "used broadly across . . . MDS subtypes"). Such opinions "are not actionable merely because the belief turned out wrong." *AMI v. Alphabet Inc.*, 2024 WL 4353637, at *3 (N.D. Cal. Sep. 3, 2024).

***Prescriber Uptake.*** Plaintiffs also allege Defendants omitted they failed to educate community prescribers, which rendered their expectations that Rytelo would become the "standard of care" misleading.[3] Opp. 9–10. Again, no contemporaneous facts objectively disprove Defendants' expectations or establish their subjective disbelief in them. Pre-approval, Geron could not have "downplayed" the prospects of Rytelo's market adoption because Rytelo was not yet FDA-approved. Opp. 10. Rather, Defendants' statements were based on their subjective extrapolations of market research, which Plaintiffs do not refute. ¶¶89, 93, 95, 97; *see, e.g.*, Ex. 11 at 7 (disclosing

---

[3] Plaintiffs conclusorily claim Defendants knew Rytelo was "burdensome," Opp. 10, merely because unidentified "physicians" thought Rytelo was "not a compelling alternative to Rebloyzl." ¶39. This lone claim does not render false, for example, Dr. Feller's statement that patient monitoring is "often merited" while "patient[s] adjusts to the new treatment[.]" ¶104.

"70% of the patients are expected to be treated in the community setting"); *Stephens v. Maplebear Inc.*, 2025 WL 1359125, at *6 (N.D. Cal. May 9, 2025) (dismissing complaint that did "not explain why things were so dire that it was misleading for Instacart to be optimistic about its prospects").[4]

Post-approval, Geron remained optimistic about Rytelo's potential given early results showing "an encouraging range" of sales from both academic and community prescribers. ¶113; Ex. 20 at 7; *see also* ¶¶100, 104, 109, 120–21, 126, 128, 131. Plaintiffs do not dispute that the academic/community breakdown was as expected. *See, e.g.*, ¶ 121 ("We are very ***pleased*** with the ***strong demand*** for RYTELO ***across community and academic settings***[.]"); ¶131 ("We've been seeing about two thirds of the patients . . . coming from community settings and about a third come from academic settings."). Instead, they obfuscate by (1) grossly misconstruing what Defendants said about "diffused" Rytelo use in the community, ¶143, and (2) conflating patient versus prescriber uptake. Opp. 9–10. As to the former, when Mr. Ziegler stated that uptake "[i]n the community" was "a little bit more diffused," he was ***not*** referring to the split between academic/community prescribers, but rather was answering an unrelated question about who was "***re-prescrib[ing]***" Rytelo. Ex. 29 at 14. As to the latter, Plaintiffs claim it was "mathematically impossible" that 70% of patients were expected to come from the community because Defendants "admit[ted]" that "the ***majority*** (*e.g.*, >50%) of Rytelo prescriptions were from academics." Opp. 9. But what Defendants actually said (months later) was "the majority of new patient starts [came] from the ***third-line plus patient segment with the second-line new patient starts lower than our expectations***." ¶142. Plaintiffs thus cannot use this statement as an admission that the "majority" of new patients came from academic settings. *See Waswick v. Torrid Holdings, Inc.*, 2023 WL 9197563, at *4 (C.D. Cal. Dec. 1, 2023) ("Plaintiffs mostly couple these varied statements with a repeated set of high-level, catch-all contentions of falsity—often 'reveal[ing] a fundamental disconnect between the 'why' Plaintiffs put forth and each statement made.'").[5]

---

[4] Plaintiffs quibble about the details of Geron's market research without ***disputing*** the research itself or that the research formed the basis of Defendants' beliefs. *See* Opp. 12.

[5] Independently, Geron's optimistic "confidence" in its "highly skilled" team's ability to meet its "expectations"—as well as the remaining challenged statements—are classic puffing and/or forward-looking statements that are not actionable. *See* Mot. 18; Appendix A. All these statements are also accompanied by on-point risk disclosures—which the Opposition ignores—and thus protected by the PSLRA's safe harbor for forward-looking statements. Mot. 18–19; Appendix B.

**C.      Statements About Rytelo's Post-Launch Performance.**

Next, Plaintiffs challenge Defendants' expectations for Rytelo's "continued" and "increased" sales and demand because Defendants (1) "admitted" in February 2025 these statements were false and (2) knew all along that Rytelo's demand was flattening because of their purported access to sales data. Opp. 5–8; ¶¶111, 113, 116, 118, 120–21, 123–24, 126, 128, 130–31, 133, 135, 137, 139. Yet Plaintiffs inappropriately remove these statements from their much-needed context—and indeed, their relevant time period—and "rely on hindsight" rather than particularized facts of falsity. *In re Cloudera, Inc. Sec. Litig.*, 121 F.4th 1180, 1187 (9th Cir. 2024).

***Admissions.*** Plaintiffs argue Defendants "admitted" in February 2025 that in September 2024, Geron "observed flat revenue trends over the last few months" per "rolling 4- and 8-week" sales data, thus rendering Defendants' earlier statements false. Opp. 6. Again, Plaintiffs misconstrue what Defendants actually said. When asked to "comment on *exactly which month* you started to see flattening," Mr. Ziegler stated: "based upon the rolling 4- and 8 week, we started to see right, let's call it, around the holidays, ***Thanksgiving holiday going forward***"—not September. Ex. 29 at 15. Defendants' rolling 4- and 8-week sales data was ***backward-looking*** based on past sales, meaning Geron used 4- and 8-week averages from January 2025 to see that revenue was flattening from Thanksgiving "going forward" (*i.e.*, from late-November 2024 to January 2025).[6] Defendants therefore could not have seen this flattening by the date of the last alleged misstatement.

Even so, Plaintiffs cannot hide behind their repeated characterization of the February 2025 disclosure as an "admission," as "an after-the-fact statement" must "contradict[] the substance of an earlier statement and essentially state, 'I knew it all along'" to constitute an admission. *In re Stem, Inc., Sec. Litig.*, 2025 WL 3675114, at *10 (N.D. Cal. Dec. 17, 2025).[7] Here, Geron ***never***

---

[6] Regardless, Plaintiffs' reading of rolling 4- and 8-week data is not pled in the AC, and they cannot amend the AC "by briefs in opposition." *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1020 (N.D. Cal. 2020). Courts also reject conclusory attempts to "ascribe . . . particular meaning or significance to [defendants'] terms," *City of Roseville Emps. Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1121 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th Cir. 2017), absent facts supporting Plaintiffs' "crucial premise." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1193 (9th Cir. 2021).

[7] *In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *10 (N.D. Cal. Nov. 4, 2020), involved a post-class period admission that Apple saw "troubling signs" "as the quarter went on," contradicting its prior statements. *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1231–

Cooley LLP
Attorneys at Law
San Diego

6                                    **Reply ISO Defs.' MTD**
**3:25-cv-02507-VC**

"admitted" its past underlying market research, sales, revenues, or expectations for growth were wrong. Far from an "admission" of past wrongdoing, Defendants statements instead reflect an after-the-fact assessment of Geron's progress "in the present, not past, tense" and a recognition of what steps needed to be taken to continue Rytelo's quarter-over-quarter growth. *Id.*; *see* ¶¶141–49.

Two cases are dispositive. In *Weston Fam. P'ship LLP v. Twitter, Inc.*, the court rejected that Twitter "must have known about [product] issues" and decreased revenue at the end of July because Twitter disclosed those issues in early August, as plaintiffs cannot rely on "later facts or developments" to "leap" to their desired conclusion. 29 F.4th 611, 621 (9th Cir. 2022). Likewise, the plaintiff in *In re Align Tech., Inc. Sec. Litig.* challenged statements that defendants "expected sales to materialize in China" in the second quarter, even though Align experienced "some [sales] slowdown" in June. 2021 WL 1176642, at *7 (N.D. Cal. Mar. 29, 2021). The court held the June revelation did not "resemble an 'I knew it all along' admission," but a "later, sobering revelation" that does not make an "earlier, cheerier statement a falsehood." *Id.* Plaintiffs here similarly cannot rely on later statements to infer falsity months earlier because "temporal proximity alone does not satisfy the particularity requirements of Rule 9(b)." *Twitter*, 29 F.4th at 622.

***Sales Data.*** Far from pleading "corroborating facts demonstrating falsity," Opp. 6, ***no particularized*** facts support CW1's claims that Defendants (1) closely monitored Rytelo's weekly sales and (2) stated at the Fast Start meeting that sales flattened in September and November 2024. Plaintiffs allege CW1 only had access to sales data for her "region" and "sales representatives" did not have access to any data "until October or November 2024." ¶¶75–76. Thus, no facts suggest CW1, much less "senior leadership," had access to nationwide sales data rendering any statement false when made. ¶76; *Nguyen v. Endologix, Inc.*, 962 F. 3d 405, 416 (9th Cir. 2020) (CWs were "short on the facts"); *McGovney v. Aerohive Networks, Inc.*, 2019 WL 8137143, at *9–10 (N.D. Cal. Aug. 7, 2019) (rejecting CW lacking "personal knowledge of . . . Company-wide financials").

CW1's Fast Start meeting allegations are equally deficient. ¶¶81–82. CW1's secondhand recounting of what was purportedly discussed at the Fast Start meeting is unreliable because she

32 (9th Cir. 2004), involved a defendant that admitted to knowing about "lost or delayed" deals "early in the third quarter." Here, no Defendant admitted to flattening in September 2024.

Cooley LLP
Attorneys at Law
San Diego

7

Reply ISO Defs.' MTD
3:25-cv-02507-VC

fails to describe "precisely" what was said during this meeting. *Aerohive*, 2019 WL 8137143, at *12; *see* Mot. 16.[8] Nor do any particularized facts corroborate CW1's claim that "sales had flattened in September" 2024. ¶81; *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1008 (9th Cir. 2009) (rejecting CWs who "report only conclusory assertions" rather than particularized facts establishing the CWs' reliability). To the contrary, this claim is squarely contradicted by the actual sales data from Q3'24 that Plaintiffs ignore. Ex. 24. What's more, CW1's silence regarding October 2024's sales shows she cannot confirm sales flattened during that month or, crucially, that Geron plausibly saw flattening earlier than Thanksgiving based on 4- and 8-week rolling averages. Nor could she. It is ***mathematically impossible*** that Rytelo revenue ***began*** flattening in September 2024—meaning sales would have been flat during every month in the fourth quarter—because it is undisputed revenue ***increased*** by 68% in Q4. Exs. 24, 28.[9]

### III.    PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER.

Nor can Plaintiffs plead a "cogent" or "compelling" inference of scienter, as they must. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). As noted above in Section II.C., Plaintiffs allege no particularized facts about Defendants' contemporaneous knowledge. Instead, they stretch Defendants' early 2025 statements well beyond any reasonable interpretation—and indeed, Plaintiffs' own allegations—to argue Defendants "admitted" they knew sales were flattening prior to 2025 because they had access to "weekly" "adverse sales data." Opp. 18–21. But Plaintiffs allege no contemporaneous facts showing whether and when ***each*** Defendant actually reviewed such data and knew its omission would knowingly mislead investors at the time the alleged misstatements were made.[10] Mot. 21; *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1086 (C.D. Cal. 2012) (no scienter absent allegations "defendants had

---

[8] There was no duty to disclose weekly snapshots. Mot. 17. Plaintiffs' cases to the contrary are distinguishable. *Cf. U.S. v. Smith*, 155 F.3d 1051 (9th Cir. 1998) (intraquarter data may be "material" in the criminal insider trading context); *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698 (9th Cir. 2016) (duty to disclose clinical trial's harmful safety results—not intraquarter data).

[9] Even accepting CW1's allegations regarding the Fast Start meeting as true (the Court should not), they are ***only*** relevant to the challenged statements at the end of the Class Period, meaning the Fast Start meeting has no relevance to the vast majority of the challenged statements.

[10] Plaintiffs cited cases are distinguishable. In *Roberti v. OSI Sys., Inc.*, defendants' challenged statement was contradicted by "important data to which [defendants] had access." 2015 WL 1985562, at *12 (C.D. Cal. Feb. 27, 2015). The AC lacks analogous allegations. *See* § II.C, *supra.*

contemporaneous knowledge their statements were false"); *Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020) (no "admission" of wrongdoing).[11]

What remains are a hodgepodge of scattershot scienter theories. But "a large quantity of otherwise questionable allegations" does not create a strong inference of scienter. *Zucco*, 552 F.3d at 1008.

*Core Operations.* Plaintiffs invoke the "core operations" theory to argue Defendants must have known their statements were false because Rytelo was Geron's sole revenue-generating product. Opp. 19. But courts repeatedly have found this reasoning flawed.[12] Rytelo was far from Geron's only operational focus. *See* Mot. 22; Ex. 33 at 8 (listing ongoing clinical trials). Applying the "core operations" doctrine here transforms the doctrine from "exceedingly rare," *City of Royal Oak Ret. Sys. v. Juniper Networks*, Inc., 880 F. Supp. 2d 1045, 1068 (N.D. Cal. 2012), into a backdoor for any plaintiff to sue an early commercial stage biopharmaceutical company.

*Stock Sales.* Neither the timing nor amount of Mr. Kapur, Dr. Grethlein, and Dr. Feller's stock sales support scienter.[13] Plaintiffs' only rejoinder is Defendants miscalculated the percentage of sales. Opp. 23 n.17. But courts regularly include restricted or unvested shares in defendants' total holdings.[14] And even without including the restricted and unvested shares, Plaintiffs have not rebutted Defendants' arguments that the timing was not suspicious. Mot. 23–24.

---

[11] Plaintiffs argue CW1 supports that Defendants knew about flattening when they made the alleged misstatements because "the January Fast Start Meeting was reflective to discuss how to increase sales." Opp. 19. Not only is this unclear, but it is also not alleged in the AC. Regardless, that Geron held a meeting about sales strategy months after the last alleged misstatement is not indicative of scienter. *See Morgan v. AXT, Inc.*, 2005 WL 2347125, at *12 (N.D. Cal. Sep. 23, 2005) (post-class period statements "insufficient to raise a strong inference of scienter").

[12] *See, e.g.*, *In re Metawave Comms. Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1075 (W.D. Wash. 2003) (even though defendant was a "small company that essentially focused on one product," plaintiffs failed to allege defendants should have known about lack of demand). Unlike here, Plaintiffs' cases include detailed allegations of access to and review of data such that it would have been absurd for defendants to not be aware of problems with their core products. *See Hayden v. Portola Pharms., Inc.*, 2021 WL 3506614, at *5 (N.D. Cal. Aug. 10, 2021) (Chhabria, J.) ("company kept close track of data on Andexxa sales and utilization," had "visibility" into drug shipments, and audited patient records).

[13] Plaintiffs' attempt to distinguish *Lipton* supports Defendants' argument. Opp. 23 n.18. The majority of Defendants did not sell *any* Geron stock and Mr. Kapur, Dr. Grethlein, and Dr. Feller's sales comprised only a small amount, at least a portion of which was comprised of stock that "vested on the achievement of regulatory approval by the FDA." Mot. 23–24.

[14] *See, e.g.*, *In re Digital Island Sec. Litig.*, 357 F.3d 322, 329 n.11 (3d Cir. 2004) ("[F]undamentally, the value of these options and restricted stock, whether vested or unvested, was necessarily tied to the market value of Digital Island's common stock[.]").

***Additional Allegations.*** Plaintiffs lastly argue Mr. Kapur and Dr. Scarlett's departures are suspicious because they were "abruptly terminated"—a fact not alleged **anywhere** in the AC, nor supported by Geron's statements regarding their departures. Opp. 21. Such unalleged speculation cannot support scienter. Mot. 23. Nor does Plaintiffs' reliance on a single analyst report (equivocal at worst) as "damning" support an inference of scienter. Opp. 21–22; Ex. 32; *see Black v. Snap, Inc.*, 2023 WL 6812762, at *13 (C.D. Cal. Sep. 26, 2023) (finding analyst reports "very critical of Snap's management" insufficient to establish scienter).[15] Plaintiffs' conclusory claims that Geron "was in dire financial straits" and its "key patent and only source of revenue was nearing expiration," Opp. 23–24, are directly contradicted by judicially noticeable facts. *See* Ex. 28 at 4 (as of Dec. 31, 2024, Geron had approximately $502.9 million in cash); Ex. 21 at 8 (Geron's multi-patent portfolio).

***Holistic Review.*** Viewed holistically, the facts alleged (as well as those noticeably absent) fail to raise a strong inference of scienter—or indeed any inference of scienter. *See Zucco*, 552 F.3d at 1008. Plaintiffs' threadbare scienter allegations cannot mask the complete absence of particularized allegations about each Defendant's mental state at the time the statements were made. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008); Mot. 24.

## IV.   PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION.

Plaintiffs' Opposition does nothing to refute that their alleged corrective disclosure only revealed Geron's ***post hoc*** assessment of Rytelo's progress and its going-forward sales strategy. Mot. 25. That analysts parroted Geron's assessment does not mean that it "corrected" the alleged fraud. *See Curry v. Yelp Inc.*, 2015 WL 1849037, at *11 (N.D. Cal. Apr. 21, 2015) (attributing stock drop to "market speculation," which does not support "a viable loss causation theory").[16]

## V.   CONCLUSION

For the above stated reasons, the AC should be dismissed given its failure to plead an actionable Section 10(b) claim and thus no predicate violation of Section 20(a).

---

[15] *Cf. In re Fibrogen, Inc.*, 2022 WL 2793032, *22 (N.D. Cal. July 15, 2022) ("scientific and financial community universally concluded that Defendants' manipulations were intentional").

[16] *Uniformed Sanitationmen's Ass'n. Comp. Accrual Fund v. Equinix, Inc.*, 2025 WL 39936, at *6 (N.D. Cal. Jan. 6, 2025) is inapposite, as it centered on whether a short-seller report could be a reliable corrective disclosure in the eyes of analysts.

Dated: January 14, 2026

COOLEY LLP


By: */s/ Ryan E. Blair*
    Ryan E. Blair

*Attorney for Defendants*