# Exhibit C

2026 WL 508834
Only the Westlaw citation is currently available.
**NOT FOR PUBLICATION**
United States Court of Appeals, Ninth Circuit.

MENORA MIVTACHIM INSURANCE LTD.;
MENORA MIVTACHIM PENSIONS AND
GEMEL LTD.; THE PHOENIX INSURANCE
COMPANY; THE PHOENIX PROVIDENT
PENSION FUND LTD., Plaintiffs - Appellants,
and
PLUMBERS AND STEAMFITTERS LOCAL
60 PENSION TRUST, Individually and on
Behalf of All Others Similarly Situated, Plaintiff,
v.
META PLATFORMS, INC., formerly known
as Facebook, Inc.; MARK ZUCKERBERG;
DAVID WEHNER; SHERYL K. SANDBERG;
SUSAN LI, Defendants - Appellees.

No. 24-6218
|
Filed February 24, 2026
|
Argued and Submitted January 6,
2026 San Francisco, California

D.C. No. 4:22-cv-01470-YGR

Appeal from the United States District Court for the Northern District of California Yvonne Gonzalez Rogers, District Judge, Presiding

Before: NGUYEN and BENNETT, Circuit Judges, and MATSUMOTO, District Judge.[**]

[**] The Honorable Kiyo A. Matsumoto, United States District Judge for the Eastern District of New York, sitting by designation.

MEMORANDUM[*]

[*] This disposition is not appropriate for publication and is not precedent

 **\*1** Plaintiffs (collectively, "Menora") appeal the district court's grant of Meta Platforms, Inc. and several executives' (collectively, "Meta") motion to dismiss fraud claims brought under the Private Securities Litigation Reform Act ("PSLRA"). We have jurisdiction under 28 U.S.C. § 1291. Reviewing de novo, *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 617 (9th Cir. 2022), we affirm.

In late April 2021, Apple changed its iPhone's operating system, the iOS, to permit users to opt out of sharing data with apps such as Meta's Facebook and Instagram. The iOS changes significantly impacted Meta's advertisement targeting and measurement capabilities. Menora sued, claiming that Meta's senior executives misled investors about the financial impact of Apple's iOS changes during Q2 and Q3 of 2021.

Menora's fraud theory is based on two categories of statements. The first set of statements involve alleged misrepresentations that Apple's iOS changes had not materially diminished Meta's advertising targeting and measurement capabilities (the "Material Impact Statements"). The second category of alleged misstatements involve Meta executives' statements that the impact from the iOS changes had been "manageable" and "in line" with expectations (the "In Line Statements"). We address each category of statements below.

"[A] complaint alleging claims under section 10(b) and Rule 10b-5 ... must satisfy the heightened pleading requirements of both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA")." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012). Under Rule 9(b), "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). To state a private securities fraud claim, the complaint must plausibly allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014).

1. The district court did not err in dismissing claims based on the Material Impact Statements because Menora failed to plead loss causation, that is, "a causal connection between the material misrepresentation and the loss." [1] *Dura Pharms.,*

*Inc. v. Broudo*, 544 U.S. 336, 342 (2005). The burden of pleading loss causation is typically satisfied by allegations that the defendant revealed the truth through "corrective disclosures" which "caused the company's stock price to drop and investors to lose money." *Halliburton*, 573 U.S. at 264.

[1]     Because the district court dismissed claims based on the Material Impact Statements only on lack of loss causation, we similarly do not reach the other elements of a securities fraud claim.

Menora relies on a statement made in February 2022 by then-CFO David Wehner that the impact of the iOS changes in 2022 would be in the order of around $10 billion. Wehner's prediction of Meta's future financial picture is not a corrective disclosure because it is forward-looking rather than "descriptive of historical fact." *S.E.C. v. Todd*, 642 F.3d 1207, 1221 (9th Cir. 2011). As the district court correctly observed, reliance on Wehner's prediction is an attempt to "reverse engineer this forward-looking observation into a retrospective analysis." Menora resists this conclusion, arguing that the district court misunderstood Wehner's statement as a corrective disclosure of past performance. As Menora sees it, the statement was a corrective disclosure—made for the first time—that the iOS changes materially affected Meta's advertising targeting and measurement *capabilities*. But, contrary to Menora's argument, Meta already had disclosed multiple times that the iOS changes would reduce its ability to target and measure advertising.

 **\*2**  Relatedly, Menora also argues that the impact of the iOS changes was "constant from the start," and thus Wehner's statement reveals the falsity of Meta's prior representations that iOS changes were not materially affecting its advertising capabilities. Again, this argument assumes that Meta failed to disclose that iOS changes would materially impact its business, an assumption that is belied by the record. Further, Menora's allegation that the impact was "roughly constant from the start" is contradicted by Menora's own allegation that Meta only "started to see that impact in Q2 [of 2021]," with consumer adoption of the iOS changes "ramp[ing] up" over time. Thus, Menora did not plausibly allege loss causation, and the fraud theory based on the Material Impact Statements fails.

2. The district court did not err in dismissing Menora's claim based on the In Line Statements because Menora failed to plead a misrepresentation. Menora first argues that comments from market analysts showed that the iOS changes were unmanageable from the outset. But the analysts' reaction to

the $10 billion impact appears only to be related to Meta's *forecast* of the revenue loss, rather than a revelation of any past performance.

Menora also argues that the district court erred in ruling that the word "manageable" was "too imprecise" to mislead investors. But when preceded by the qualifying language "we think," the term "manageable" is reasonably viewed as an opinion, *see Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 187–88 (2015), and a "subjective assessment hardly amounts to a securities violation." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010). Securities law "does not allow investors to second-guess inherently subjective and uncertain assessments" of business executives. *Omnicare*, 575 U.S. at 186. "In context, any reasonable investor would have understood [Meta's statements] as mere corporate optimism." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014).

Finally, we agree with the district court's conclusion that the words "manageable" and "immaterial" are not synonyms because something can be material *as well as* manageable. "Manageable" means "capable of being managed"; it does not mean "immaterial." *Manageable*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/manageable (last visited Jan. 29, 2026). And to a "reasonable investor," *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 764 (9th Cir. 2023), the significant impact Meta expected from the iOS changes can still be "manageable" to Meta. Moreover, a word that may have "many dictionary definitions ... must draw its meaning from its context." *Kucana v. Holder*, 558 U.S. 233, 245 (2010); *see also Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1131 (9th Cir. 2025) ("To decide whether a misstatement or omission can mislead, we need to look at the context surrounding the statement." (citation modified)). In context, the references to "manageable" described an impact that was not immaterial, given that Meta had consistently signaled the significant impact of the iOS changes. For example, during a July 2021 investors' call, Meta plainly told investors not to infer that the impact of the iOS changes was immaterial. Thus, Menora did not plausibly allege that reasonable investors were misled to believe that the impact of the iOS changes was immaterial, and the fraud theory based on the In Line Statements fails.

**AFFIRMED.**

**All Citations**

Not Reported in Fed. Rptr., 2026 WL 508834

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.