UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

REZA DABESTANI, et al.,
Plaintiffs,
v.
GERON CORPORATION, et al.,
Defendants.

Case No. 25-cv-02507-VC

**ORDER GRANTING THE MOTION TO DISMISS**

Re: Dkt. No. 50, 51

The motion to dismiss is granted with leave to amend.[1] This order assumes that the reader is familiar with the facts, the applicable laws, regulations, and legal standards, and the arguments made by the parties.

1. *Section 10(b) and Rule 10b-5 Claims.* Securities fraud claims are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act. *See Espy v. J2 Glob., Inc.*, 99 F.4th 527, 535 (9th Cir. 2024). To state a claim under Section 10(b) of the Exchange Act and its implementing regulations, a plaintiff must allege, among other things, that the defendant made a false or misleading and material misrepresentation with scienter. *Id*. To allege falsity, the complaint must "specify each statement alleged to have been misleading," as well as the "reasons why the statement is misleading." *Zucco Partners, LLC v. Digimarc Corp*., 552 F.3d 981, 990 (9th Cir. 2009), *as amended* (Feb. 10, 2009). To allege scienter, the complaint must "state with

[1] The defendant's request for judicial notice is granted as to exhibits 2, 5, 6, 8, 9, 11, 12, 13, 14, 15, 17, 18, 20, 22, 23, 24, 25, 26, 27, 29, 30, 31, 32, 33, and 34 because those documents are incorporated by reference into the operative complaint. *See* Dkt. Nos. 50, 51. The request is denied as to the rest.

particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (quoting 15 U.S.C. § 78u-4(b)(2)). For forward-looking statements that fall under the PSLRA's safe-harbor provision, the plaintiff must plead that the defendant acted with actual knowledge of the statement's false or misleading nature. 15 U.S.C. § 78u-5(c)(1)(B)(i). For other statements, allegations raising a strong inference of deliberate recklessness to the danger of misleading investors will suffice. *Zucco*, 552 F.3d at 991.

The plaintiffs' strongest claim concerns certain statements made by CEO John Scarlett at the December 7, 2024, Evercore Conference. *See* Dkt. No. 40 ¶¶ 137-140. There, Scarlett said, "As we look ahead, we see strong continued growth."[2] *Id.* ¶ 137. He assured investors that Geron has "always been very strong . . . across the entire second line setting." *Id.* And in response to a question about "lingering hesitance," he answered, "I don't think we're seeing hesitancy [related to cytopenia management]. . . . These hematologists say, you don't understand, every drug that we use does this. We don't care. We manage it all day, every day. . . . So I don't think it's going to be the big limiting factor." *Id.* ¶ 139.

The plaintiffs argue that Scarlett made those statements knowing that they were misleading or false (or at least with deliberate recklessness as to their misleading or false nature). Their strongest support for that theory comes from the February 26, 2025, earnings call statements made by CCO Jim Ziegler about Geron's flattening sales. In response to an analyst's question about "exactly which month you started to see flatting," Ziegler answered, "based upon the rolling 4- and 8-week, we started to see right, let's call it, around the holidays, Thanksgiving holiday going forward." *Id.* ¶ 145. According to the plaintiffs, Ziegler's statement revealed that Geron executives knew from the rolling four- and eight-week sales data leading up to Thanksgiving that sales had been flattening since September or October 2024. *See also id.* ¶ 81

[2] Scarlett's statement about "continued growth" is a "mixed statement" because it contains both a forward-looking aspect (*i.e.*, a prediction about future growth), which falls under the PSLRA safe harbor, and a non-forward-looking aspect (*i.e.*, an indication of past growth), which does not fall under the PSLRA safe harbor. *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1190 (9th Cir. 2021). The requisite scienter accordingly depends on which aspect of the mixed statement is targeted by the plaintiffs' theory of liability.

(CW1 alleging that Ziegler admitted during a January 2025 meeting that sales were flat in September and December 2024). The plaintiffs say that because Geron's "core operations" centered around Rytelo's commercial success, it can be inferred that Geron executives were aware that Scarlett's December 7, 2025, statements contradicted contemporaneous sales data. *See id.* ¶¶ 201-02; *Construction Laborers Pension Trust of Greater St. Louis v. Funko Inc.*, 166 F.4th 805, 831 (9th Cir. 2026).

The plaintiffs' allegations do not give rise to a strong inference of scienter. Apart from CW1's vague and uncorroborated hearsay statement about Geron's September 2024 sales, of which CW1 did not have any personal knowledge, there are no other allegations that Geron sales began to flatten prior to Thanksgiving—let alone that Geron executives knew about such flattening. *See* Dkt. No. 40 ¶ 81; *see also Zucco*, 522 F.3d at 995 (requiring confidential witness statements introduced to establish scienter to "be described with sufficient particularity to establish their reliability and personal knowledge"). The plaintiffs' only plausible support for their theory is the statement that Ziegler made on the February 2025 earnings call. But Ziegler's statement is ambiguous. Although the plaintiffs' interpretation of it is plausible, it is not as compelling as the opposing innocent inference: that sales had begun flattening around Thanksgiving and that Geron executives became reasonably certain about such flattening only after the four- to eight-week data capturing the holiday season became finalized in late December 2024, after the Evercore Conference. *See* Dkt. No. 50, at 21.

The plaintiffs insist that, even if sales had only begun to flatten in late November 2024, the defendants would still have known that fact before the Evercore Conference by tracking the weekly data. *See* Dkt. No. 40 ¶¶ 164-67. But the complaint does not plausibly allege that weekly data is a reliable indicator of sales trends. If anything, it appears that the purpose of calculating rolling four- to eight-week figures is to account for week-by-week variability. The plaintiffs' claims about the statements made at the Evercore Conference accordingly do not survive the Court's "holistic review," which must take into account "plausible opposing inferences"

weighing "against a finding of scienter."[3] *Zucco*, 552 F.3d at 1006.

For the same reasons that the complaint fails to adequately allege falsity and scienter as to the statements made in December 2024, the plaintiffs have also failed to plead falsity or scienter as to the risk disclosure statements made in November 2024. *See, e.g.*, Dkt. No. 40 ¶ 116 (Q3 2024 Form 10-Q). Nor have they adequately pled that any of the forward-looking statements made in November 2024 about Geron's projected uptake and growth were made with actual knowledge of falsity. *See, e.g.*, *id*. ¶¶ 120-21 (expressing "confidence in future continued demand"); *id.* ¶ 131 (predicting that cytopenia management would not deter prescribing physicians from prescribing Rytelo); *id.* ¶ 135 (projecting "strong steady growth").

The rest of the plaintiffs' claims do not even come close to surviving dismissal. For example, the plaintiffs have failed to state a claim with respect to any of the risk disclosure statements that were made prior to November 2024. *See, e.g.*, Dkt. No. 40 ¶ 83 (2023 Form 10-K); *id.* ¶ 91 (Q1 2024 Form 10-Q); *id.* ¶ 107 (Q2 2024 Form 10-Q). Geron warned early on that its ability to commercialize Rytelo would be critical to its financial success, but the complaint does not allege that Geron executives knew at any point that those risks had already materialized at the time each statement was made. If anything, Rytelo's first quarter of sales, which "exceeded" expectations, belies the plaintiffs' theory that Rytelo's launch was doomed from the start. *Id*. ¶ 120. Rytelo's early success also cuts against the plaintiffs' theory that the forward-looking statements made before November 2024 were made with actual knowledge of falsity. *See, e.g.*, Dkt. No. 40 ¶¶ 93, 100, 102 (anticipating demand based on market research); *id.* ¶ 111 (stating that Rytelo could become part of the standard of care). Without any concrete allegations to the contrary, the most plausible inference from the facts alleged is that Geron executives

[3] In its holistic review, the Court also considered plaintiffs' allegations of suspicious circumstances throughout the relevant period. *See, e.g.*, Dkt. No. 40 ¶¶ 192, 196, 199 (speculating about certain Geron executives' stock sales); *id*. ¶¶ 78, 175 (noting the timing of Kapur's and Scarlett's departures); *id*. ¶¶ 185-87 (quoting analysts' negative reactions to the February 2025 earnings call). Because those alleged events are not probative of wrongdoing and because they are not accompanied by more particularized allegations of falsity or scienter, they do not make the plaintiffs' claims viable. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 998 (9th Cir. 2009), *as amended* (Feb. 10, 2009).

reasonably thought that Geron's early success would continue at the time that those statements were made.

Finally, the plaintiffs argue that Geron executives deliberately misled investors by making vague, optimistic statements about the business throughout the relevant period. *See, e.g.*, Dkt. No. 40 ¶ 87 (lauding "highly experienced" staff); *id.* ¶ 89 (citing "extensive" discussions with physicians); *id.* ¶ 93 (extrapolating from research that usage would be "meaningful" among a subgroup of patients); *id.* ¶¶ 111, 113 (describing "gratifying" uptake and "enthusiastic reception" by an "encouraging" range of customers); *id.* ¶ 120 (emphasizing Rytelo's "compelling" value proposition); *id.* ¶ 133 (expecting to be "very, very, very strongly competitive" in second line usage). But because even amateur investors "know how to devalue the optimism of corporate executives," those statements are inactionable. *Funko Inc.*, 166 F.4th at 822.

2. *Section 20(a) Claims.* The plaintiffs' Section 20(a) claims are derivative of their Section 10(b) and Rule 10b-5 claims. The Section 20(a) claims are accordingly dismissed.

* * *

The Court is skeptical that the plaintiffs will be able to state a claim with respect to any statements other than those made at the December 2024 Evercore Conference (and perhaps in November 2024). But dismissal is with leave to amend. Any amended complaint must be filed within 14 days of this order. If no amended complaint is filed, then dismissal will be with prejudice.

**IT IS SO ORDERED.**

Dated: March 30, 2026

VINCE CHHABRIA
United States District Judge